# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

JOHN FEESE,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]

    Defendant.

1:17-cv-00054 GSA

**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF, JOHN FEESE AND AGAINST DEFENDANT, NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY**

## I. INTRODUCTION

Plaintiff, John Feese ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs which were submitted without oral argument to

---

[1] Pursuant to Fed. R. Civ. Pro. 25(d), Nancy A. Berryhill shall be substituted in for Carolyn W. Colvin, as Nancy A. Berryhill is now the acting Commissioner of Social Security.

1

the Honorable Gary S. Austin, United States Magistrate Judge.[2] (*See,* Docs. 10 and 13). Upon a review of the entire record, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, the Court GRANTS Plaintiff's appeal IN PART, and remands the case for further proceedings.

## II. FACTS AND PRIOR PROCEEDINGS[3]

### A. Background

Plaintiff previously worked as a truck driver, casino manager, paramedic, and police officer. AR 19. He filed an application for DIB under Title II of the Act on January 17, 2013, alleging an onset of disability beginning August 8, 2011, due to cervical fusion at C2-C3, total lumbar injury, and diabetes. AR 11;63;87. The agency denied Plaintiff's application initially and on reconsideration. AR 11;111-115;118-122. On July 8, 2015, after holding administrative hearings on December 9, 2014 and May 12, 2015 (AR 26-85), Administrative Law Judge ("ALJ") G. Ross Wheatley issued a decision denying the application. AR 11-20. The Appeals Council upheld that decision on December 16, 2015 (AR 1-6), making that decision the final decision of the Commissioner. Plaintiff sought judicial review by commencing the instant action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Summary of the Medical Record

The Court has reviewed the entire medical record. AR 277-1624. Because the parties are familiar with Plaintiff's medical history, the Court will not exhaustively summarize these facts in this order. Relevant portions of the medical record related to Plaintiff's impairments and treatment will be referenced in this decision where appropriate.

### C. Plaintiff's Testimony

On December 9, 2014, Plaintiff testified at a hearing before the ALJ. He testified that after receiving his GED, he completed two programs at Merced College and Modesto City College to become an emergency medical technician and for peace officer training. AR 61-62. Plaintiff filed for unemployment in 2012 and 2013. AR 64-65. Plaintiff reported that his back and neck were his primary impairments although he also suffers from a left rotator cuff tear. AR 66-67. He

---

[2] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 4 and 5).

[3] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

2

reported that all five of his lumbar discs were, "messed up," causing his foot to swell up and to drop. AR 68. Doctors have told him surgery is not an option to correct his back pain because of the way his nerves are bundled in his lower back. AR 68-69. He has done physical therapy in the past but the only thing that really works well is traction that he does at home. AR 69.

Plaintiff also suffers from pain in his neck. AR 65. He already had one neck fusion surgery, but two more surgeries are required because his neck pain is getting worse which prevents him from moving his head up or around. AR 65-66. He takes Baclofen for pain which provides some relief for a few hours but does not help increase mobility in his neck. AR 71. He also receives shots in his neck every three months which helps the pain a lot, but they only provide relief for the first month. AR 72-73. He is also diabetic and takes insulin daily. AR 72.

With regard to daily activities, he can dress and groom himself and cook meals for the family. AR 77-79. He also does some vacuuming. AR 79. Plaintiff uses a cane outside of the house to walk longer distances on uneven surfaces. AR 77. He has five children. AR 70-71. His oldest son in nineteen and is in the Navy. AR 79. He has four other children who live at home with him and his wife, including an eleven year old, a nine year old, and twins who are four. AR 78-80. His oldest son's girlfriend who is sixteen also lives with them. AR 79. He is the primary caregiver for the children during the day because his wife works. AR 78-80. He drives his older children to and from school and occasionally drives them to doctors' appointments. AR 80-81. He can walk from the park to school. AR 74. He has driven to Fremont to visit family in the past year, which takes about an hour and fifteen minutes. AR 81-82. In-city driving is more difficult because he has to move his neck which causes him pain. AR 81-82. He likes to read Clive Custler's novels and goes grocery shopping with his wife. AR 83.

Plaintiff testified at a supplemental hearing before the same ALJ on May 12, 2015. AR 28-54. Plaintiff alleged increased symptoms since the last hearing, including more neck pain and decreased mobility due to a disc herniation in his neck, urinary control problems, and back spasms. AR 31-34. He takes Motrin and Baclofen to address his pain, however, he does not take stronger narcotic medications because the drugs make him fall asleep and he has to care for his children. They also give him nightmares. AR 26; 36. He has difficulty staying asleep due to pain, incontinence, and frequent urination. AR 33; 42-43. He goes to the grocery store once every two weeks and he can lift and transfer a bag of groceries from the cart to his car. AR 35-36. When

grocery shopping, he shops for about forty-five minutes but leans on the cart during that time. AR 44. He drove forty minutes to the hearing and drives his kids a mile to school. AR 41-42. He also experiences depression, anxiety, and anger in response to his poor physical condition and associated frustrations with his family. AR 37. He goes to counseling with his wife and also takes his ten year old son to therapy to address his son's anger issues. AR 39-40. He does not take any medication to address his own psychological symptoms. AR 39.

### III. THE DISABILITY STANDARD

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
> 42 U.S.C. § 1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. § 404.1520(a).[4] The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. § 404.1520(a)(4). The ALJ must consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1513.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability; (2) whether the claimant had medically-determinable "severe" impairments; (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work; and (5) whether the claimant had the ability to perform other jobs

---

[4] References to the regulations in this order are to the 2015 regulations that were in effect at the time of the ALJ's decision.

existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)(4).

## IV. SUMMARY OF THE ALJ'S DECISION

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was insured through December 31, 2016, and that Plaintiff had not engaged in substantial gainful activity since August 8, 2011, the alleged disability date. AR 13. The ALJ identified cervical degenerative disc disease, diabetes, chronic lumbar spine degenerative disc disease, left rotator cuff tendinitis, obesity, depression, and anxiety as severe impairments. AR 13. However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listing impairments in 20 C.F.R. Part 404 P, Appendix 1. AR 13-15. As part of his analysis, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of his alleged symptoms were not entirely credible. AR 13-19.

The ALJ also determined that Plaintiff had the RFC to perform a restricted range of light work as defined in 20 CFR § 404.1567(b). Specifically, he found Plaintiff could lift and carry up to twenty pounds occasionally and ten pounds frequently; sit, stand, and walk for six hours in an eight hour workday with the use of a cane for long and uneven terrain; frequently push and pull with the upper left extremity; occasionally climb, balance, and stoop; frequently reach and handle bilaterally; occasionally reach overhead bilaterally; no crouching, crawling, or kneeling; must avoid all exposure to extreme cold and heat; must avoid concentrated exposure to wetness, humidity, and excessive noise; is limited to simple, routine, and repetitive tasks; is limited to occasional changes in a work setting; and must have close supervision, defined as a supervisor checking on the claimant three times per day. AR 15-19.

At step four, the ALJ found Plaintiff could not perform his past relevant work as a truck driver, casino manager, paramedic, or police officer. AR19. However, at step five, the ALJ concluded that other jobs existed in significant numbers in the national economy that Plaintiff could perform including an office helper, interviewer, and inspector. AR 20. The ALJ therefore concluded Plaintiff was not disabled. AR 20

## V. THE ISSUES PRESENTED

Plaintiff argues that that ALJ improperly evaluated his credibility because the ALJ failed to properly evaluate the medical record. Specifically, Plaintiff argues that the ALJ improperly

5

rejected Dr. Sumra's (Plaintiff's treating physician) opinion. Instead, the ALJ relied upon orthopedic consultative examiner Dr. Van Kirk's opinion. When doing so, the ALJ failed to acknowledge an examination performed by Dr. Senegor, a neurosurgeon, who opined that conservative treatment had failed and that Plaintiff was in need of additional surgery to repair a disc herniation in his cervical spine. Plaintiff further alleges that the ALJ's reliance on Dr. Van Kirk's opinion is also improper because it is not clear that as part of his assessment, Dr. Van Kirk reviewed Dr. Senegor's opinion, or a 2014 MRI of Plaintiff's cervical spine. Finally, Plaintiff argues that the ALJ improperly assessed Plaintiff's psychological impairments because he did not properly weigh the consultative psychologists' opinions. As a result, the RFC does not properly incorporate all of his limitations. He requests that the Court credit Dr. Sumra's opinion and that the case be remanded for an award of benefits. Alternatively, he requests that the case be remanded for further proceedings. (Doc. 10, pgs. 7-24).

The Commissioner contends that the ALJ properly evaluated Plaintiff's credibility because he properly weighed the medical evidence related to Plaintiff's physical and psychological impairments. Specifically, Defendant argues that Dr. Senegor's opinion did not contain any functional assessment. Therefore, the ALJ properly relied on Dr. Kirk's independent consultative examination in conjunction with the other two non-examining physicians to reject Dr. Sumra's opinion and formulate the RFC. Moreover, the ALJ's credibility evaluation was proper because the ALJ relied on Plaintiff's demeanor at the hearing, his improvement with medication, and Plaintiff's activities of daily living to find him not credible. Therefore, the ALJ's decision is supported by substantial evidence and should be affirmed. Alternatively, if the Court finds error, the Commissioner requests that the case be remanded for further proceedings. (Doc. 13, pgs. 16-28).

## VI.     THE STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence, and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which,

considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one which supports the ALJ's decision, the ALJ's conclusion must be upheld. *Id*.

## VII. DISCUSSION
### A. The ALJ Did Not Properly Assess the Medical Record and Therefore his Credibility Findings are Not Supported by Substantial Evidence.

As noted above, Plaintiff argues that the ALJ's assessment of the medical evidence and his credibility findings are not supported by substantial evidence. At the crux of Plaintiff's arguments is that neither the ALJ, nor Dr. Van Kirk, addressed Dr. Senegor's report, who opined that Plaintiff had severe cervical degenerative disc disease which required additional surgery. Moreover, Dr. Van Kirk did not consider a 2014 MRI of Plaintiff's cervical spine as part of his evaluation. As a result, Plaintiff contends that the ALJ improperly rejected Dr. Sumra's opinion, made inaccurate conclusions about the objective medical evidence, and erroneously discredited his allegations of pain. After reviewing the record, the Court agrees with the Plaintiff.

#### 1. *Legal Standard*

The weight given to medical opinions depends in part on whether they are offered by treating, examining, or non-examining (reviewing) professionals. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). However, "the opinion of the treating physician is not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. CSS*, 169 F.3d 595, 600 (9th Cir. 1999). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). When doing so, an ALJ may reject the uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Ghanim v. Colvin*, 763 F. 3d 1154, 1161 (9th Cir. 2014); *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Lester*, 81 F.3d at 830.

///

### a) *Plaintiff's Physical Impairments*

Here, the ALJ discussed four doctors' opinions when evaluating Plaintiff's physical impairments: Dr. Sumar, M.D., Plaintiff's treating physician; Dr. Dale H. Van Kirk, M.D., an examining consultative orthopedic surgeon; and two state non-examining physicians - Dr. A. Nasrabadi, M.D. and Dr. Iriani Sutanto-Dang, M.D. The ALJ rejected Dr. Sumar's opinion and gave the greatest weight to Dr. Van Kirk's findings. He also gave the two non-examining physicians' opinions some weight.

### i) *Dr. Sumra's Opinion*

On August 8, 2013, Dr. Samra completed a residual functional capacity questionnaire. AR 931-934. He diagnosed Plaintiff with chronic neck pain, radiculopathy, and chronic low back pain. AR 931. He assessed Plaintiff's psychological conditions as stress from not being able to work. AR 932. Dr. Samra opined that Plaintiff's impairments would frequently interfere with attention and concentration, and found that he was incapable of even low stress jobs because of chronic neck pain. AR 932. Dr. Samra estimated Plaintiff could walk for one to two blocks, sit for thirty minutes, stand for five minutes, sit for about four hours, and stand/walk less than two hours in an eight-hour workday. AR 932-933. He also reported that Plaintiff must walk for five minutes every fifteen minutes and needed unscheduled breaks, but did not need a cane or assistive device. AR 933. Dr. Samra opined Plaintiff could rarely lift ten pounds and never lift more than ten pounds, he could rarely look down or hold his head in static position, but he could occasionally turn his head or look up. AR 933. Plaintiff could use his hands twenty percent of the day, his fingers ten percent of the day, and his arms between zero and ten percent of the day. AR 934. Dr. Samra did not provide an estimate for the number of days of work per month Plaintiff would miss due to his alleged impairments. AR 934.

The ALJ gave Dr. Sumra's opinion little weight because it was not consistent with the medical evidence or Plaintiff's daily activities. The ALJ noted that Plaintiff cares for his children, goes shopping, and occasionally drives to the Bay area which is inconsistent with Dr. Samra's limitations. AR 18.

### ii) *The Non-Examining Physicians' Opinions*

Dr. A. Nasrabadi, M.D. reviewed Plaintiff's medical record on July 8, 2013. AR 292-295. Dr. Nasrabadi found Plaintiff capable of lifting twenty pounds occasionally and ten pounds

8

frequently, standing and walking six hours in an eight-hour workday, sitting for six hours in an eight-hour day, and unlimited pushing and pulling. AR 92-93. Dr. Nasrabadi assessed an occasional ability to climb ramps, no ability to climb ladders, occasional balancing, stooping, kneeling, crouching and crawling, and limited overhead reaching on both sides. AR 93. The doctor concluded postural limitations were required because of degenerative disc disease, disc bulges, some flexibility limitations, mild spine tenderness and limited range of motion in the neck. AR 93.

On January 3, 2014, Dr. Iriani Sutanto-Dang, M.D., a state agency physician, reviewed the medical record on reconsideration of Plaintiff's application. AR 105-109. She noted that Plaintiff complained of increased pain, but the objective findings had not significantly changed. Additionally, Plaintiff demonstrated an intact gait and a positive neurological exam. AR 105-109. Dr. Sutanto-Dang agreed with Dr. Nasrabadi's assessment and proposed residual functional capacity. AR 107.

Overall, the ALJ gave these doctors' opinions great weight, except that he noted that Plaintiff required more restrictive environmental and push-pull limitations. AR 18. In doing so, the ALJ noted that these doctors are familiar with Social Security policy and regulations. Also, the doctors reviewed the complete documentary record and provided detailed explanations with references to the evidence to support the opinions. Moreover, the ALJ noted that the doctors' findings are consistent with Plaintiff's refusal to take narcotic medications and his ability to care for his children. AR 18.

### iii) Dr. Dale Van Kirk's Opinion

On January 15, 2015, Plaintiff underwent a comprehensive orthopedic consultative examination with Dale H. Van Kirk, M.D. AR 1522-1533. Plaintiff reported pain with repetitive flexing, overhead reaching, pushing and pulling, and limitations in the rotary motions of his upper extremities or heavy lifting. He claimed he could stand and walk for one hour and sit for thirty minutes. AR 1523. Plaintiff cooked whatever "is required" and performed some household chores, including vacuuming and taking out the trash, though nothing "heavy." AR 1523. Plaintiff also drove and took walks "periodically" but not every day. AR 1523.

Dr. Van Kirk found Plaintiff sat comfortably in the examination chair, and could get up and walk around the examination room without difficulty. AR 1524. Plaintiff was slightly overweight

and claimed to use a cane for mobility. AR 1524. Regarding Plaintiff's neck, Dr. Van Kirk found Plaintiff's main pain was in the rear (posteriorly) and radiated into the soft tissues; he had a cervical range of motion limited to flexion 0-20 degrees and extension 0-25 degrees, with side-to-side tilt of 15 degrees and rotation of 0-30 degrees bilaterally. AR 1524. Regarding Plaintiff's back, Dr. Van Kirk found Plaintiff's main pain was in the mid-lumbar spine and it radiated from the rear (posteriorly) and into the buttocks; he could bend over within 8 inches of touching the floor, had flexion of 0-70 degrees, extension 0-15 degrees, side-to-side tilt of 0-15 degrees, and rotation 0-25 degrees in each direction of the upper lumbar (dorsolumbar) spine. AR 1525. Plaintiff had no pain or abnormal flexing associated with rotating his hips, knees, ankles, elbows, writs, or fingers/thumbs. AR 1525. Although Plaintiff expressed generalized discomfort in his left shoulder, he was able to move it with a full range of motion. AR 1525. Plaintiff had 5/5 motor strength in upper and lower extremities and grip, and his sense of touch was grossly intact. AR 1525.

Dr. Van Kirk assessed Plaintiff with status post anterior cervical decompression and fusion with residual pain and stiffness; chronic lumbrosacral strain/sprain, likely associated with degenerative disc disease; and rotator cuff tendonitis of the left shoulder. AR 1526. Dr. Van Kirk found Plaintiff could stand and/or walk for six hours in an eight-hour day with no sitting limitations; he could lift ten pounds frequently and twenty pounds occasionally, perform occasional postural activities, and had no restrictions for feeling, fingering, or other fine manipulative activities. AR 1526. Plaintiff was restricted to occasional gross manipulative activities, such as lifting a box and placing it on a high shelf (AR 1526), though there would be no gross manipulative limitations if his arms were kept at the shoulder level or below. AR 1527. Dr. Van Kirk also opined that Plaintiff should not work in extremely cold or damp environments. AR 1527. He found Plaintiff's cane was not medically necessary, though he thought it could make him feel more steady and confident. AR 1526.

The ALJ attributed great weight to this opinion because it was supported by the entire medical record and was offered by a doctor who is familiar with the Social Security regulations. The ALJ also noted that the opinion considers Plaintiff's spinal limitations as reflected in the reaching and lift-carry restrictions. Further, the ALJ noted that the opinion was consistent with Plaintiff's daily activities which include caring for his children and going shopping with his wife. AR 18.

*iv) Analysis*

Because there were contradictory medical opinions, the ALJ needed to state specific and legitimate reasons for rejecting Dr. Sumar's findings. *Ghanim*, 763 at 1161; *Lester*, 81 F.3d at 830. A review of the record indicates that the ALJ did not do so because as Plaintiff correctly points out, contrary to the ALJ's representations, none of the agency doctors considered Plaintiff's most recent 2014 MRI of his cervical spine, or neurosurgeon Dr. Moris Senegor's report. As a result, the ALJ's decision is not supported by substantial evidence.

In the decision, the ALJ correctly notes that Plaintiff previously had neck fusion surgery in January 2009, including an anterior cervical discectomy and fusion at C5-6, with VG2 allograft and titanium plate. AR 16; 328. Surgery was performed after an August 2008 MRI of the cervical spine revealed prominent left posterolateral protrusion of degenerated disc and ligamenteous material at C5-C6, compromise of the left anterior thecal sac, and compromise of the left neural foramen. AR 326.

Plaintiff reinjured his back in 2011. AR 16; 278-279; 282; 946-961; 1056-1057. At that time, Plaintiff was treated at Kaiser Permanente ("Kaiser"). AR 277-930. Conservative treatment was recommended including taking analgesics (e.g. Asprin) (AR 282-283), physical therapy (AR 310-315; 335), aquatic therapy (AR 348), and facet joint injections. AR 328. An MRI of Plaintiff's cervical spine on August 11, 2011, revealed moderate degenerative disc disease and degenerative joint disease at the C3-C4 level causing moderate mass effect on the thecal sac, which appeared to make contact with the cord without encephalomalacia; bilateral neural foramen stenosis at this level; small/moderate sized left paracentral protrusion and disc bulge at C4-C5 level causing moderate mass effect on the thecal sac without encephalomalacia. The neural foramen were preserved; and degenerative disc disease and degnerative joint disease at the C6-C7 level causing mass effect on the thecal sac but the cord was preserved. AR 322-323. Another MRI of Plaintiff's lumbar spine was performed on January 17, 2012, which revealed "multi-level abnormalities most pronounced at L-S1 and L5-L5." AR 476.

In 2013, Plaintiff's health insurance changed and he was no longer seen at Kaiser. AR 1501. He began seeing Dr. Thomas Wilson in March 2014 for upper back and neck pain AR 992-993; 1503; 1505-1506. Plaintiff was examined by Dr. Clark (Dr. Wilson's associate) who ordered another MRI. AR 1510. Dr. Clark assessed cervical disc disease post-surgery with possible

rotator cuff pathology in the left shoulder. AR 1510. Dr. Clark ordered an MRI of Plaintiff's cervical spine on June 26, 2014, which revealed prominent disc osteophyte complex and a disc protrusion at Plaintiff's C6-C7 vertebrae, resulting in moderate to severe central canal stenosis. AR 1002. Dr. Clark likewise found an osteophyte complex resulting in mild to moderate central canal stenosis at the C4-C5 vertebrae, moderate stenosis at C3-C4, mild central canal stenosis at C5-C6, and multilevel neural formainal narrowing, most severe at C3-C4. AR 1002.

Plaintiff returned to Dr. Clark on July 18, 2014 with complaints of moderate to severe neck pain, for which he took Ibuprofen. AR 1555. Dr. Clark assessed severe cervical stenosis with significant disc herniations and osteophytes at C3-4, C4-5, and C6-7, with spinal cord impingement and narrowing of the spinal canal. AR 1556 . Dr. Clark prescribed increased Ibuprofen, as well as Tramadol, an opiate pain reliever, and recommended referral to a spine surgeon. AR 1556.

On September 17, 2014, neurological surgeon Morris Senegor M.D. reviewed Plaintiff's 2014 MRI. AR 1498-1500. He reported the following:

> This patient's current symptoms include neck and left shoulder with pain radiating down the left arm all the way down. There is numbness and tinging in the 2nd and 3rd digits of the left hand in a fairly classic C7 radicular distribution. On the right side, he has shoulder pain only. Physical therapy has been attempted and epidural steroid injections have been attempted, neither of which were beneficial. The patient has become progressively worse and has been incapacitated for the last 3 years. Available for review is an MRI scan of the cervical spine dated 06/26/2014 which reveals the old fusion at C5-6. . . . C6-7 is the main problem. There is a very large disc herniation in the area that is completely wiping out the ventral spinal canal and causing left sided foraminal stenosis. My impression of this patient is that he has a left C7 radiculopathy due to the C6-7 disc herniation. . . . He has failed conservative management and is a candidate for an ACDF at C6-7. A.R. 1498-1500.

The difficulty with the ALJ's decision is that he never references Dr. Senegor's report, and more importantly, he incorrectly states that he is crediting the agency doctors because they are specialists in Social Security regulations who have reviewed the complete medical file. AR 18. However, the medical records after March 2014 were not reviewed by the state non-examining physicians because their opinions were completed prior to that date. Additionally, although Dr. Van Kirk completed his examination in 2015, it does not appear that he examined these

documents either. When listing "Review of Records" Dr. Van Kirk states, "Allegations: 'Cervical Fusion C2-C3, total lumbar injury, diabetes.' He cannot look up to the side." AR 1522. Dr. Van Kirk likewise does not reference these documents anywhere in the opinion. AR 1522-1533.

The Commissioner has argued that the failure of the ALJ to reference Dr. Senegor's report in the decision is not error because the ALJ is not required to discuss every piece of evidence, and the doctor's report was a not a medical source since he offered no functional assessment of Plaintiff's abilities. (Doc. 13, pgs. 18-19 citing 20 C.F.R. § 404.1502(a)(3)). Instead, the ALJ relied on Dr. Van Kirk's opinion who performed an independent assessment of Plaintiff's range of motion in his back, neck, and hands, which constitutes substantial evidence for giving this opinion the greatest weight. The Court disagrees. While a review of Dr. Senegor's report may not have been crucial for Dr. Van Kirk to review since he performed his own examination, the Court is unable to evaluate whether a review of the 2014 MRI would have changed Dr. Van Kirk's assessment of Plaintiff's functional limitations. Further, although the ALJ does not have to discuss every piece of evidence in the file when assessing credibility, the ALJ is required to evaluate the medical evidence. *Treichler v. Comm. of Soc. Sec.*, 775 F. 3d 1090, 1102 (9th Cir. 2014) (the first step to assessing pain testimony is for the ALJ to determine whether the claimant has presented objective medical evidence of his or her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged); 20 C.F.R. § 404.1529 (when determining whether you are disabled, we consider all of your symptoms, including your pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence). In this instance, the ALJ discredited Plaintiff's testimony in part because the state agency doctors' opinions did not support his allegations of pain, but these doctors had not reviewed all of the medical records as the ALJ represented. AR 16-19. Moreover, the ALJ's decision failed to reference Dr. Senegor's report indicating that Plaintiff's condition had changed such that he had a herniated disc at C6-C7 and was candidate for another surgery. This information may have affected how the ALJ assessed the veracity of Plaintiff's statements related to the level of pain he was experiencing.

The Court is also not persuaded by the Commissioner's arguments that the ALJ's assessment of the medical evidence and his credibility determinations are supported by the fact that Plaintiff engaged in a wide range of activities of daily living including taking care of his children, going

13

shopping with his wife, and occasionally driving to the Bay area. AR 16-18. It is true that a claimant's daily activities can constitute a reason to discredit a physician's opinion, as well as discredit a claimant's testimony. *Ghanim*, 763 F.3d at 1162 (9th Cir. 2014) (conflict between medical opinion and daily activities "may justify rejecting a treating provider's opinion"); *Rollins v. Massanari*, 261 F. 3d 853, 856 (9th Cir. 2001) (ALJ properly discounted treating doctor's opinion for being "so extreme as to be implausible" where there was no indication in the record for the basis of the restrictions and the limitations were inconsistent with Plaintiff's level of activity); *Molina v. CSS*, 674 F. 3d 1104, 1112-1113 (9th Cir. 2012) (an ALJ can properly discount a claimant's credibility when the daily activities demonstrate an inconsistency between what the claimant can do and the degree that disability alleged). However, this reason is not sufficient in light of the fact that records related to Plaintiff's most recent medical condition were not examined. Similarly, the ALJ's reliance on the fact that Plaintiff's condition improved with medication cannot be upheld in light of the fact that this medical evidence was not evaluated. Given all of the above, the ALJ's decision is not supported by substantial evidence.

**VIII.  REMAND**

Plaintiff urges this Court to fully credit Dr. Sumar's opinion and remand this case for an award of benefits. A remand with for an award of benefits is only appropriate when the record has been fully developed and further administrative proceedings would serve no useful purpose. Conversely, remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin*, 759 F. 3d at 1020-1021. Here, no doctor, including Dr. Sumar, has evaluated all the relevant medical records in this case. Additionally, the Court notes that despite Plaintiff's medical condition, he is able to perform a wide range of daily activities as outlined above which does undermine his claims of disabling pain. AR 35-36; 41-42; 44; 71-83; 237-238. As such, remand for an award of benefits is not warranted at this time. Further development of the record is required so that a medical opinion(s) can be obtained after all of the medical evidence is examined. The ALJ should then determine the appropriate weight each medical opinion should be given and make the appropriate disability determination.

Because the Court is remanding for renewed consideration of an assessment of Plaintiff's physical impairments, the Court dispenses with an analysis of Plaintiff's arguments related to the

ALJ's assessment his psychological impairments. The record establishes that Plaintiff's psychological impairment, namely his depression and its associated symptoms, is inescapably linked to Plaintiff's physical impairments and his level of pain. AR 1538 (Dr. Harrelson noting that Plaintiff's physical condition was the main reason for Plaintiff's mental state); AR 37 (Plaintiff testifying that he experiences depression, anxiety, and anger in response to his poor physical condition); AR 932 (Plaintiff's "psychological conditions" consisted of "stress [from] not being able to work."). Therefore, on remand, the ALJ should reassess Plaintiff's psychological impairments in combination with the assessment of Plaintiff's physical impairments and the extent of his pain.

### XIV. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence. Accordingly, this Court GRANTS Plaintiff's appeal IN PART. The case is remanded to the Commissioner of Social Security for further administrative proceedings consistent with this opinion. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff John Feese, and against Nancy A. Berryhill, Commissioner of Social Security, and to close this action.

IT IS SO ORDERED.

Dated: **March 30, 2018**               **/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE